## Staunton

BOBBY LEE GUILL v. EDGAR CLAY AARON, II.

September 9, 1966.

Record No. 6250.

Present, All the Justices.

*Stephen D. Martin, Jr.*, for the plaintiff in error. Submitted on brief.

*Charles R. Warren, Jr.* and *Warren, Parker and Williams*, for the defendant in error. Submitted on brief.

CARRICO, J., delivered the opinion of the court.

Bobby Lee Guill, the plaintiff, filed a motion for judgment against Edgar Clay Aaron, II, the defendant, seeking to recover damages for personal injuries sustained by the plaintiff while a guest passenger in a vehicle operated by the defendant.

A jury trial resulted in a verdict in favor of the plaintiff in the sum of $10,000.00 which, upon motion of the defendant, was set aside by the trial court. Final judgment was entered in favor of the defendant. The plaintiff was granted a writ of error.

The sole question presented in this appeal is whether there was sufficient evidence establishing gross negligence on the part of the defendant to support the verdict of the jury.

The evidence shows that the parties to this action were lifelong friends and that the plaintiff had ridden with the defendant "many, many times." On the evening of January 5, 1963, the defendant, his son and the latter's girl friend were visiting in the home of the plaintiff in Danville. According to the plaintiff, "there had been some sleet right after dark that day . . . and the radio and television both had been warning motorists not to drive unless it was absolutely necessary."

Young Aaron left the plaintiff's home in the defendant's automobile to drive his girl friend to her home. As the young couple left, the defendant told his son to "be careful, because the roads were bad and he would be worried."

When his son did not return in a reasonable time, the defendant asked the plaintiff to accompany him "to find his car." As the plaintiff and the defendant left the house, the plaintiff's wife called to him, "Y'all be careful, the road is in bad shape."

The two men left in the plaintiff's vehicle, with the plaintiff driving. They traveled approximately four miles over city streets without encountering slippery conditions. However, when they crossed Main Street Bridge, "there was some ice there."

The plaintiff and the defendant met young Aaron on the bridge. The son turned his vehicle around and followed the other car until both vehicles reached a restaurant on Route 58. The three men then entered the defendant's automobile to take the son to his home. The son drove a part of the way and the defendant took over the driving after a stop was made near the Danville airport.

No ice was encountered on the highway on the trip to young Aaron's home, located on a dirt road six miles from the bridge. According to the plaintiff, the defendant's operation of the auto-

mobile, until they reached the son's home, "had been perfectly reasonable, good driving."

The plaintiff testified that after young Aaron got out of the automobile at his home, the defendant "accelerated some which made the tires spin"; that "the back end started to fishtail"; that the vehicle obtained a speed of "approximately 50, 55 miles an hour" in "approximately 800 feet"; that the car "topped over this hill" and started to slide on some ice on the road; that the defendant said, "Uh-oh, Bobby, we've messed up," and that the vehicle slid "approximately 150 to 200 feet," struck an embankment and was demolished.

State Trooper Layne was called to the accident, which occurred at approximately 11:45 p. m. He had been on duty since 3:30 in the afternoon and had not seen "any ice anywhere on the road anytime that night other than the place this accident happened." The trooper approached the accident scene at a speed of 15 to 20 miles per hour, slowed his vehicle almost to a stop, struck the same spot of ice that caused the defendant's accident, slid into a ditch and came to rest close to the defendant's vehicle.

Trooper Layne testified that the ice "appeared to have been there some several days due to the fact that these pine trees along there shade this portion of the road. This was not altogether fresh ice. It was due to prior weather."

Trooper Layne stated that the speed limit "where this thing took place" was 55 miles per hour, but that 25 miles per hour would be a reasonable speed. The plaintiff told the trooper, immediately after the accident, that "it all happened so fast" that he did not know how fast the defendant was driving when the accident occurred. The plaintiff admitted on the witness stand that he "deliberately refrained from telling the State Patrolman the truth" in order to save the defendant from losing his operator's license.

The defendant, in his testimony, denied that he rapidly accelerated his vehicle at any time before the accident occurred. He also denied that he was driving faster than 25 to 30 miles per hour and that he was driving in any unusual manner when the accident happened.

The trial judge, in a written opinion, concluded that the verdict of the jury should be set aside because "as a matter of law there is no showing of gross negligence." We agree with that conclusion.

The plaintiff, in order to sustain his claim against the defendant, had the burden of showing that his injuries were "caused or resulted from the gross negligence" of the defendant. Code, § 8-646.1.

Gross negligence "is that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men. Whether it has been proved depends on the facts and circumstances of each case. If the evidence is such that reasonable men should not differ as to what is proved, the question is one of law for the court." *Rigney* v. *Neauman*, 203 Va. 822, 826, 127 S. E. 2d 403.

It is true, and we do not overlook the fact, that the jury found gross negligence on the part of the defendant in the operation of the vehicle. But the verdict of the jury has been set aside by the trial court and it does not, therefore, come to us with the weight it would carry had it received the approval of the court. *Butler* v. *Darden*, 189 Va. 459, 471, 53 S. E. 2d 146; *Clark* v. *Parker*, 161 Va. 480, 486, 171 S. E. 600.

The authority to set aside a jury verdict and to enter final judgment is vested in a trial judge by the provisions of Code, § 8-352. The extent of that authority is delineated in *Clark* v. *Parker, supra*, as follows:

"The very fact that he is given the power to set aside a verdict as contrary to the evidence necessarily means that he must, to some extent at least, pass upon the weight of the evidence. 'It would, indeed, be a futile and idle thing for the law to give a court a supervisory authority over the proceedings and manner of conducting a cause before the jury, and the right to set aside the verdict of the jury therein because contrary to the evidence, unless the judge vested with such power could consider, to some extent at least, the evidence in the cause. . . .' " 161 Va., at p. 486.

It is clear, from a reading of the opinion of the trial court, that the judge adopted the view that the accident would not have occurred but for the presence of the spot of ice on the road and that the defendant did not know, and was not put on notice, of the presence of the ice. That view is sustained by the evidence, just as the judge's conclusion that gross negligence was not involved in the happening of the accident is supported by the authorities.

In 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 511, p. 71, it is stated: ·

"The skidding of a motor vehicle has been generally held not to constitute gross negligence . . . under a guest statute or comparable common-law rule, so as to render the owner or operator thereof liable for injuries sustained by a gratuitous guest as the result of such skidding. . . ."

See also Annotation, 113 A.L.R. 1002, at p. 1044.

The precise question here presented appears to have been before this court on only one previous occasion. In *Austin* v. *Austin,* 186 Va. 382, 43 S. E. 2d 31, the plaintiff was injured while riding as a guest in the defendant's automobile. The defendant, driving at the legal speed limit, passed two vehicles and, before returning to his proper lane, struck a spot of ice on the highway, skidded and collided with a tree on the side of the road. The trial court struck the plaintiff's evidence "as being insufficient to support a finding of gross negligence against the defendant" and, on appeal, such action was affirmed. This court held that "[t]here is no evidence of the defendant's recklessness or that he utterly disregarded prudence or grossly neglected the safety of others. The only probable cause of the accident, as shown by the evidence, was the skidding on the invisible ice which caused the defendant to lose control of his car." 186 Va., at p. 387.

Both of the parties to this litigation rely upon the case of *Whitley* v. *Patterson,* 204 Va. 36, 129 S. E. 2d 19. In that case, there was a jury verdict in favor of the defendant whose vehicle skidded a distance of 200 feet on an icy bridge, on a snowy day, striking the plaintiff. We upheld the jury's verdict on the basis that it was not shown that the defendant was aware of the icy condition of the bridge.

The defendant relies upon the *Whitley* case for the principle that "it is generally held that mere proof of the skidding of a motor vehicle on a slippery roadway does not establish negligence on the part of its operator, but is a circumstance to be considered along with all of the other evidence in determining whether negligence has been shown."

The plaintiff, however, points to the language in the *Whitley* opinion which states that "[i]n cases of skidding the principle inquiry is as to the driver's conduct prior to such skidding" and that "[w]hether the driver of a car has exercised the proper care under the given circumstances and whether the skidding of his car has resulted from his negligence are usually jury questions."

But the *Whitley* case was one involving simple negligence only. If the facts of that case were sufficient to support a finding by the jury of no simple negligence on the part of that defendant, then the facts of this case require a finding, as a matter of law, that there was no gross negligence on the part of the defendant here.

In the case before us, the evidence shows clearly that no ice was encountered by the plaintiff and the defendant on their entire trip except "some" on the bridge, six miles from the scene of the accident. Neither the defendant nor the plaintiff was aware of the icy condition of the road just beyond the brow of the hill where the accident occurred. There is no evidence to show that even after reaching the brow of the hill, the icy condition was apparent to either of the occupants of the automobile. The obscurity of the presence of the icy spot was confirmed by Trooper Layne who, operating at a slow speed and in a careful manner, skidded on the same icy spot and crashed into a ditch.

The plaintiff conceded that the defendant's operation of the vehicle until they reached the son's home "had been perfectly reasonable, good driving." The plaintiff did not complain to the defendant about the manner in which the vehicle was operated after leaving the son's home. And, even though he confessed before the jury that he had deliberately lied to the State Trooper about the defendant's speed when the accident occurred, the plaintiff still did not, in his testimony, place that speed in excess of the lawful limit.

Admittedly, the jury was entitled to find that the operation of the vehicle by the defendant from the son's home to the brow of the hill, as related by the plaintiff, was unusual. But mere unusual operation of a motor vehicle is not sufficient to support a finding of gross negligence. *Scott* v. *Foley*, 205 Va. 382, 388, 136 S. E. 2d 849.

The most that the plaintiff established by his testimony about the unusual manner in which the vehicle was operated, before it reached the brow of the hill, was a case of simple negligence. The mere addition of the skid on the unknown spot of ice was not sufficient to raise any such negligence from simple to gross.

The trial court did not err in setting the verdict aside and its action in doing so will, accordingly, be

*Affirmed.*